BROWN
*vs*
MATTINGLY.

---

APPEAL.

## Brown *vs* Mattingly.

Case 153.

ERROR TO THE NELSON CIRCUIT.

*Construction of contracts.*

May 29.

JUDGE MARSHALL delivered the opinion of the Court.

A contract to pay $50 for the colts of five mares to be put to a Jack, colts or no colts, is not payable until the usual time of weaning colts, unless there be an express agreement to the contrary.

IT seems to this Court, that the Circuit Court erred in instructing the jury for the plaintiff, that upon their finding the facts assumed in the instruction, the plaintiff had a right to the fifty dollars, as soon as the mares were tried, unless he had committed a fraud: Referring, as we should do, the terms of the contract as proved, to the printed offer of the defendant in regard to the purchase of mule colts, (and perhaps even without that reference,) we think the clear implication is that the $50 was to be paid at the time at which the colts, if any, would, according to the ordinary course of treatment, be weaned. On the ground of this error, as well as of surprise, as made out by the affidavit filed, a new trial should have been granted.

Wherefore, the judgment is reversed and the cause remanded for a new trial.

*B. & A. Monroe* for plaintiff: *Hardin* for defendant.

---

### PETITION FOR A RE-HEARING,
By Mr. Hardin.

May 30.

THE undersigned respectfully asks the Court for a re-hearing of this cause, and if that is not granted, then he solicits a modification of the opinion.

The contract, as proved by George Robertson, the only witness, was, that Mattingly was to put six mares to Brown's Jack; was to pay nothing for the season; if five mares took the Jack, Brown was to pay Mattingly fifty dollars and take the chance of the colts. The mares were brought to the Jack regularly, and five took the Jack. The question is, when was the money to be paid? The answer is obvious; when the contingency happened on which Mattingly was to have the fifty dollars, to-wit: five mares to take the Jack, and not when the colts were weaned, because, whether they had colts or not, the money was to be paid. The printed bills could have no influence on the contract, for Mattingly positively refused the terms of the printed bill, and said he would not make such a contract. It was a chancing bargain on both sides; if there were no colts, Brown made a bad contract; if there were five colts, he got them at half price; if three colts, he made ten dollars by the contract, better than the printed bills; if two only, he lost ten dollars. The Court say, in the opinion, that the money is not due until the colts were weaned. Suppose the mares had no colts, how then? The Court, it is humbly conceived, fell into that error by connecting the contract with the printed bills; when Robertson swears that Mattingly refused to make such a contract as the printed bills proposed, but said his contract must be more certain and sure; if Mattingly did not take care of the mares and put them regularly, and deliver the colts, he is liable to Brown on his contract, for that part of the contract is independent, and is not a condition precedent.

As to the fraud part, it is all a farce. Mattingly's mares were better than common mares, and there was nothing peculiar in them to indicate they would not breed to a Jack; besides, three of them had colts. What Robertson swore on the trial before the Justices, was not materially different from what he swore in Court; besides, it does not appear but the magistrates could have been had on the spot. The affidavit of Brown only intimates that Watts could not have been had, nor would the testimony of Watts have changed the verdict on the fraud branch of the case, for the conversation of Mattingly in relation to

his mares not breeding to a Jack, was all a joke. For the above reasons, the undersigned asks for a re-hearing.